UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> vs. ) <br> ) <br> DOUGLAS LEE THAYER, ) <br> ) <br> Defendant. ) <br> ) | Case No.: 2:21-cr-00053-GMN-VCF <br><br> **ORDER DENYING § 2255 MOTION** |

Pending before the Court is Petitioner Douglas Lee Thayer's Motion to Vacate, Set Aside, or Correct Sentence under § 2255 ("§ 2255 Mot."), (ECF Nos. 215, 216). The Government filed a Response to Petitioner's Motion, (ECF No. 221), to which Petitioner filed a Reply, (ECF No. 222). Also pending before the Court are Petitioner's Motion for Opportunity to be Heard, (ECF No. 224), and Motion to Expand Record, (ECF No. 223).[1]

The Court **DENIES** Petitioner's § 2255 Motion because he fails to show vacatur or correction of his conviction and sentence is warranted.

I. **BACKGROUND**

In 2021, a grand jury returned an Indictment for Petitioner for devising a scheme to fraudulently obtain money from clients of U.S. Adult Adoption Services Inc. ("USAAS"). (*See generally* Indictment, ECF No. 1). USAAS purported to offer U.S. citizenship and birth certificates to their clients though adoption by U.S. citizens. (*Id.*). The indictment alleged that Petitioner falsely represented to USAAS clients that an insurance policy was in place to guarantee a full refund if they did not become citizens, and detailed other allegations of false

---

[1] The Court construes these motions as Motions to Supplement. Petitioner's Motion for Opportunity to be Heard provides additional argument and citations to case law relating to his second claim for relief. Petitioner's Motion to Expand Record includes exhibits related to his Reply brief. The Government did not oppose these motions, and thus the Court GRANTS these motions as unopposed.

representations relating to the legality of the business and fee structure. (*Id.* at 2–4).  Petitioner was the Executive Director of USAAS. (*Id.* at 2).

Petitioner was charged in the Indictment with seven counts: Count One in violation of 18 U.S.C. § 1343 Wire Fraud; and Counts Two though Seven in violation of 18 U.S.C. § 1341 Mail Fraud.  The Government later moved to dismiss Counts Three and Six of the Indictment pursuant to Federal Rule of Criminal Procedure 48(a), which the Court granted. (Order Granting Mot. Dismiss, ECF No. 91).

The trial resulted in a split jury verdict.  The jury found Petitioner not guilty on Counts One though Four but guilty on Counts Five and Seven. (Jury Verdict, ECF No. 116).  At trial, Petitioner's defense was that he did not form and operate USAAS with the intent of defrauding its customers; rather, he relied on the advice of two attorneys, Mr. Carter and Mr. Klink, who advised Petitioner that citizenship through adult adoption was legal. (Pet.'s Sentencing Mem. 7:17–23, ECF No. 130).  The jury acquitted Petitioner on the counts related to USAAS's formation and operations. (*Id.* 8:1–2).

Counts Five and Seven, for which Petitioner was found guilty, related to fraudulent closure letters and refund letters and checks sent to USAAS clients withholding some of the funds they paid for the service. (Indictment at 7).  The partial refunds were provided in exchange for an agreement purporting to waive all claims against USAAS. (*Id.* at 4).  None of the USAAS clients became citizens, and USAAS shut down after Petitioner found out about a similar adult adoption scheme in California. (Gov. Sentencing Mem. 2:1–5, ECF No. 131). After the shutdown, Petitioner sent letters and partial refund checks to clients L.Z. and Z.Z. representing that the refund check constituted the "remaining unused portion of the funds" paid to USAAS. (*Id.* 2:6–11).  The Court sentenced Petitioner to 70 months in custody per count, concurrent to one another, and 2 years of supervised release per count, concurrent to one another.  The Court also ordered $729,496.00 in restitution. (Am. J., ECF No. 157).  Petitioner

1 appealed his judgment and conviction to the Ninth Circuit, (Not. Appeal, ECF No. 140), but
2 later filed a voluntary dismissal of his appeal, (USCA Order, ECF No. 167).
3     In September 2023, Petitioner filed his first § 2255 Motion, (ECF No. 168).  A few
4 months later, he submitted 15 Memorandum in Support of that Motion. (*See* ECF Nos. 179–
5 193); (Min. Order, ECF No. 189).  This led the Government to file a Motion to Strike, which
6 the Court granted because Petitioner's additional Memorandum violated Local Rules 7-2 and 7-
7 3. (*Id.*).  The Court denied the first § 2255 Motion without prejudice and provided Petitioner
8 with additional time to file a motion that complied with the local rules. (*Id.*).
9     Petitioner then filed his second § 2255 Motion.  But while Petitioner's first § 2255
10 Motion raised 11 arguments, Petitioner's second § 2255 Motion raised only one. (*See* Order
11 Denying Second § 2255 Motion, ECF No. 211).   Because the Court did not know whether
12 Petitioner had intentionally abandoned his other ten claims, it denied the second § 2255 Motion
13 without prejudice to allow Petitioner a third chance to allege all claims in one motion. (*Id.*).
14 The Court advised Petitioner to file one complete § 2255 Motion in a single filing with all
15 necessary exhibits attached to that filing. (*Id.*).  Petitioner then filed the instant § 2255 Motion,
16 (ECF No. 215).

17 **II.   LEGAL STANDARD**

18     Section 2255 "was intended to afford federal prisoners a remedy identical in scope to
19 federal habeas corpus." *Davis v. United States*, 417 U.S. 333, 343 (1974).  Section 2255
20 provides, in pertinent part: "A prisoner in custody under sentence of a court established by Act
21 of Congress claiming the right to be released upon the ground that the sentence was imposed in
22 violation of the Constitution or laws of the United States . . .  may move the court which
23 imposed the sentence to vacate, set aside or correct the sentence." *Id.* at  344–45. To warrant
24 relief, the prisoner must demonstrate the existence of an error of constitutional magnitude
25 which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.

*See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("*Brecht*'s harmless error standard applies to habeas cases under section 2255[.]").  Relief is warranted only upon the showing of "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis*, 417 U.S. at 346.

Under § 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting 28 U.S.C. § 2255).  The court may deny a hearing if the movant's allegations, viewed against the record, fail to state a claim for relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996).  To earn the right to a hearing, therefore, the movant must make specific factual allegations which, if true, would entitle him to relief. *Id*.  Mere conclusory statements in a § 2255 motion do not warrant a hearing. *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980).

### III. DISCUSSION

Petitioner brings four claims for potential relief.  Claim one alleges that the Court violated his due process rights by not timely mailing particular court orders relating to his first § 2255 Motion. (§ 2255 Mot. at 30).  Claims two through four allege that Petitioner received ineffective assistance of counsel. (*Id.* at 30–32).

**A. Claim One: Violation of Due Process**

Inmates have the right to access the courts to challenge their conviction. *Lewis v. Casey*, 518 U.S. 343, 354–55. (1996).  But the doctrine of standing requires an inmate to allege an "actual injury" due to the inmate's inability to access the courts. *Id.* at 349–51.  This requires an inmate to allege that "a nonfrivolous legal claim had been frustrated or was being impeded." *Id.* at 353.

Petitioner fails to allege an actual injury and thus his first claim for relief fails. Petitioner states that he did not receive ECF Nos. 169, 173, 174, 176, 198, or 205. ("§ 2255 Mot. at 29). Once the Court became aware of this problem, however, corrective action was taken. All orders were mailed to Petitioner and the deadlines were extended. Thus, any clerical error was subsequently cured, and Petitioner was provided ample opportunity to avoid prejudice. Per the Court's instruction, Petitioner filed his Third § 2255 Motion, and it is now under consideration. Thus, Petitioner's legal claims have not been impeded and he suffered no injury.

### B. Claim Two: Ineffective Assistance of Counsel for Diminished Capacity

Petitioner next alleges that he is entitled to relief because his court appointed counsel, William Brown, failed to investigate the evidence of Petitioner's PTSD, mental health, and memory loss, and failed to present them to the jury for a diminished capacity jury instruction. (§ 2255 Mot. at 30–31).

To prevail on an ineffective assistance of counsel claim, Petitioner must show both deficient performance under an objective standard of reasonableness and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate deficient performance, "[t]he challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed to the defendant by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687). To demonstrate prejudice, the petitioner must show that "but for counsel's unprofessional errors," there is a reasonable probability "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome."). "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

      Petitioner is correct that his counsel had a duty to make a reasonable investigation into his mental health. *See Strickland*, 466 U.S. at 691. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id*. Whether an investigation decision is reasonable depends critically on information supplied by the defendant. *Id*. "For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether." *Id*. The Court's inquiry into the reasonableness of Mr. Brown's decision not to investigate the details of Petitioner's mental health background must include "a heavy measure of deference to counsel's judgments." *Id.*

      Petitioner's claim is based on his allegation that his counsel did not interview his Primary Care Physician or Veterans Affairs ("V.A.") Clinical Psychologist, and did not obtain Petitioner's V.A. medical records. (§ 2255 Mot. at 41). Petitioner provided information to his counsel about his PTSD diagnosis, mental health impairments, and memory loss, but alleges that it was unreasonable for his counsel not to do the additional investigation into his medical records. (*Id.* at 41–42). Petitioner "explained in detail" that he was a disabled veteran who had not been provided with medical or mental health treatment for his injuries until 2019, but that since 2019, he had been undergoing mental health treatment with Clinical Psychologist Sepideh Irvani and was under the medical care of Christopher Ng., MD. (*Id.* at 7). He "described in detail" the trauma that he was subjected to while in the military, relayed that he had experienced episodes of dissociative amnesia, and explained his PTSD symptoms. (*Id.*). Mr. Brown asked Petitioner to execute a HIPPA Release form, which he did. (*Id.* at 8).

      Mr. Brown's decision not to conduct the interviews or obtain certain medical records was objectively reasonable because he was apparently informed at length about Petitioner's medical history and made the strategic decision not to use Petitioner's mental health as a

defense. The *Strickland* Court explained that when a criminal defendant informs his counsel of facts that support a potential line of defense, "the need for further investigation may be considerably diminished or eliminated altogether." 466 U.S. at 691. Here, Petitioner made his counsel fully aware of his mental health history and diagnoses, and his counsel decided that he did not need to further investigate. Rather than rely on a diminished capacity defense, Mr. Brown argued that Petitioner relied on the advice of his attorneys. This defense led to the jury's "not guilty" verdict on Counts One through Four. Applying a "heavy measure of deference" to Mr. Brown's decision, as the Court must, it cannot be said that Mr. Brown's decision was objectively unreasonable.

But even if Mr. Brown's actions had been unreasonable, Petitioner fails to demonstrate prejudice. To demonstrate prejudice, he must show that "but for counsel's unprofessional errors," there is a reasonable probability "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Petitioner makes the conclusory statement that he was prejudiced by not having his mental health evidence presented to the jury or receiving a diminished capacity jury instruction. (§ 2255 Mot. at 46). This is insufficient. A petitioner must allege facts—not conclusory allegations—to warrant relief. *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994). Petitioner has already been acquitted on the charges relating to his knowledge of USAAS's legality, but was convicted of mail fraud for providing fraudulent information to clients and withholding funds they paid for services. Petitioner provides no explanation as to how the jury's knowledge of his PTSD and mental health issues would have led to a different result in the proceedings.

**C. Claim Three: Ineffective Assistance of Counsel for Failure to Call Cathie France as a Trial Witness**

Petitioner's third claim for ineffective assistance of counsel relates to an affidavit by his former secretary, Cathie France. Petitioner claims that his counsel's failure to call his head secretary, Cathie France, as a trial witness, violated his right to effective assistance of counsel

because her testimony would have impeached the credibility and testimony of the Government's witness, Toni Miller. (§ 2255 Mot. at 46). He alleges that France's testimony demonstrates that the Government knew Miller's testimony was false. (*Id.*). Further, he argues that he was prejudiced when his counsel agreed with the government not to ask Miller questions about her criminal activity and narcotic use in the office. (*Id.*).

Beginning with the first claim, Petitioner fails to demonstrate a reasonable probability that "the result of the proceeding would have been different" if his counsel had called France as a witness. *See Strickland*, 466 U.S. at 694. "[T]he duty to investigate and prepare a defense is not limitless: it does not necessarily require that every conceivable witness be interviewed." *Hendricks v. Calderon*, 70 F.3d 1032, 1040 (9th Cir.1995) (citations and quotations omitted). Petitioner points to small things in France's affidavit that conflict with Miller's testimony, but the only testimony in France's affidavit particularly relevant to Petitioner's mail fraud convictions is her statement that the shutdown notices and refund letters were prepared by Liliya Berkowitz and Chris Klink. (France Aff. at 3, Ex. 10 to § 2255 Mot.). As the Government points out, this testimony alone does not create a reasonable probability that the result of the proceedings would have been different because Petitioner's own trial testimony demonstrated that he had knowledge of the refund process and signed each check. (*See* Tr. Thayer Test. at 27–29, 41–43, ECF No. 106) (stating that he "may have" told clients they would receive a full refund through insurance if citizenship was not obtained, deposited client's funds in his bank account, and authorized the refund checks). When asked why clients were only refunded a small portion of their money, Petitioner said it was because of the business's expenses. (*Id.* at 51). Thus, even if France had testified that Mr. Klink and Ms. Berkowitz created the shutdown notice letters and refund letters, Petitioner did not demonstrate that this testimony would have changed the result of the proceedings.

Petitioner also does not explain how France's testimony demonstrates that the Government knew Miller's testimony was false. He alleges that the Government "knew that Toni Miller's testimony was false when she testified that 'Petitioner showed birth certificates to basically every client that came into the office as proof.'" (*Id.* at 48). He argues that this testimony was incorrect because Miller worked in the legal office and was not privy to what went on in his private office, so she couldn't have known whether he showed birth certificates to clients. (*Id.*). France would testify that USAAS had five separate offices that were not connected. (*Id.*). But just because USAAS had five offices does not conclusively prove that Miller's testimony was false. Miller could have had knowledge that Petitioner showed birth certificates to clients even though she worked in a separate office. And although Petitioner alleges that Special Agents Mike Kung and Courtney Brooks knew the offices were separate, (*id.* at 48), France did not testify to this fact. So, nothing in France's affidavit demonstrates that the Government knew it was presenting false testimony.

Lastly, Petitioner claims he was prejudiced because his counsel agreed with the Government not to impeach Miller for her criminal activity and narcotic use at Petitioner's office. (*Id.* at 49). Other than this conclusory statement, Petitioner presents no facts as to why this agreement would have changed the result of the proceedings. It is objectively reasonable for Petitioner's counsel to agree to prevent the jury from learning about illegal narcotics use at USAAS. Petitioner's third claim for relief therefore fails.

### D. Claim Four: Ineffective Assistance of Counsel for Failure to Investigate USAAS's Formation and Call other Witnesses

Petitioner's fourth claim consists of three separate arguments. The first argument is that Mr. Brown failed to investigate the formation of USAAS and obtain copies of relevant formation documents. (*Id.* at 51). Because Petitioner has been acquitted on the charges relating to his knowledge of USAAS's legality, this investigation could not have changed the outcome to be more favorable for Petitioner and therefore this argument fails.

Petitioner's second argument is that counsel was ineffective because he did not add Special Agent Mike Kung FBI to the witness list or issue a subpoena for him to appear. (*Id.* at 54). Petitioner alleges that he should have been allowed to confront and cross-examine his accuser. (*Id.*). As the Government points out and Petitioner acknowledges, Special Agent Kung was not a called as a Government witness and thus he could not have been cross-examined. But regardless, Petitioner does not specify why an examination of Special Agent Kung would have changed the outcome at trial. He does not allege what information Special Agent Kung would have provided or how it might have been relevant to the defense of his mail fraud charges. "When the record clearly shows that the lawyer was well-informed, and the defendant fails to state what additional information would be gained by the discovery she or he now claims was necessary, an ineffective assistance claim fails." *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir) (finding no sufficient showing of cause to demonstrate ineffective assistance of counsel when the defendant did not "identify any information that [counsel] had not already gained from other witnesses that he would have gained from interviewing [the potential witness] . . . ."). Additionally, the failure to call Special Agent Kung as a witness was not a violation of the Confrontation Clause because Special Agent Kung was not a witness, nor does Petitioner allege any out-of-court statements admitted at trial. *See Ohio v. Clark*, 576 U.S. 237, 243 (2015) ("'[W]itnesses,' under the Confrontation Clause, are those 'who bear testimony[.]'").

Petitioner's third and last argument suffers the same deficiencies. Petitioner argues that his counsel should have called his attorney Mr. Klink to the stand to question him about the advice he provided to Petitioner. (*Id.* at 51–52). But Petitioner provides no facts as to what he would have testified to or why questioning Mr. Klink would have changed the outcome of the trial. As to both Special Agent Kung and Mr. Klink, Petitioner "fails to satisfy the prejudice prong because any prejudice from any investigation error does not sufficiently undermine

confidence in the jury's verdict." *Bragg*, 242 F.3d at 1089.  In sum, the Court finds Petitioner's § 2255 Motion fails to show that vacatur of his conviction or sentence is warranted.  Accordingly, Petitioner's § 2255 Motion is DENIED.

### E.  Evidentiary Hearing

Under § 2255, the Court must hold an evidentiary hearing unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; *see Frazer v. United States*, 18 F.3d 778, 781 (9th Cir. 1994).  "No hearing is required if the allegations, viewed against the record, either fail to state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *Shah v. United States*, 878 F.2d 1156, 1158 (9th Cir. 1989); *see United States v. Howard*, 381 F.3d 873, 879 (9th Cir. 2004) (holding that no evidentiary hearing is required unless the petitioner raises "detailed and controverted issues of fact").  The detailed record in this matter is a sufficient basis on which to decide Petitioner's claims and determine that he is entitled to no relief.  Accordingly, the Court exercises its discretion not to hold an evidentiary hearing. *Shah*, 878 F.2d at 1158.

### F.  Certificate of Appealability

A habeas petitioner may not appeal the denial of a § 2255 habeas petition unless he obtains a certificate of appealability from a district or circuit judge. 28 U.S.C. § 2253(c)(1)(B); *see also United States v. Asrar*, 116 F.3d 1268, 1269–70 (9th Cir. 1997) (holding that district courts retain authority to issue certificates of appealability).  A certificate of appealability is authorized "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  To meet this threshold showing, a petitioner must show that (1) the issues are debatable among jurists of reason, (2) a court could resolve the issues in a different manner, or (3) the questions are adequate to deserve encouragement to proceed

further. *Lambright v. Stewart*, 220 F.3d 1022, 1025–26 (9th Cir. 2000) (citing *Slack v. McDaniel*, 529 U.S. 473 (2000); *Barefoot v. Estelle*, 463 U.S. 880 (1983)). Based on this Court's review of the record, the issues presented are not debatable among jurists of reason and no issues could be resolved in a different manner.  This Court further finds that no questions are adequate for further proceedings.  Therefore, Petitioner is not entitled to a certificate of appealability.

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under § 2255, (ECF Nos. 215, 216), is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's Motion for Opportunity to be Heard, (ECF No. 224), and Motion to Expand Record, (ECF No. 223), are **GRANTED** as unopposed.

Dated this  30  day of August, 2024.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT